

**ORDERED in the Southern District of Florida on August 26, 2014.**

**Robert A. Mark, Judge**
**United States Bankruptcy Court**

---

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**

| | | |
|---|---|---|
| In re | ) | CASE NO. 13-36143-RAM |
| | ) | CHAPTER 7 |
| SHLOMO BENTOV, | ) | |
| | ) | |
| Debtor. | ) | |
| | ) | |
| | ) | |
| HOWARD ALTERNATIVES, INC., etc., et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | ADV. NO. 14-01165-RAM |
| | ) | |
| SHLOMO BENTOV, | ) | |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM OPINION AND ORDER**
**GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

The Plaintiffs filed a complaint under 11 U.S.C. §523(a)(2) seeking to except from discharge a fraud judgment entered against the Defendant Debtor. The Plaintiffs have moved for summary judgment arguing that because the state court

complaint included a fraud count, the default final judgment conclusively establishes the elements of fraud under §523(a)(2). Therefore the Plaintiffs urge application of collateral estoppel to bar the Defendant from relitigating the fraud claim in this adversary.

The Defendant's primary defense is that the state court complaint included other counts in addition to the fraud count and the final judgment does not specify which counts the state court ruled on. For the reasons discussed below, Plaintiffs' summary judgment motion will be granted. Collateral estoppel bars the defendant from relitigating the fraud claim even though the state court complaint included other claims that would be dischargeable.

## **Procedural History**

Howard Alternatives, Inc. ("HAI") and SD Aroma LLC, ("SD"), two companies controlled by Dale Howard (the "Plaintiffs"), filed this adversary proceeding on February 7, 2014 [DE #1] (the "Complaint") to determine the dischargeability of a final judgment entered in their favor and against the Defendant and Debtor, Shlomo Bentov,[1] and other defendants, on

---

[1] The Debtor's last name in the bankruptcy petition is "Bentov" but in the state court complaint he is referred to as "Ben-Tov." The hyphenated spelling will be used in references to the state court case.

July 3, 2012 [DE# 1-4] (the "State Court Final Judgment"). The Complaint sought to except from discharge the State Court Final Judgment pursuant to 11 U.S.C. §523(a)(2) and (a)(6). On March 12, 2014, Defendant Bentov filed a motion to dismiss [DE# 5], which the Court granted in part and denied in part [DE# 11]. The §523(a)(6) count was dismissed and only the §523(a)(2) remained.

After the resolution of the motion to dismiss, the Plaintiffs moved for final summary judgment [DE# 14] (the "Motion for Summary Judgment"). The Defendant filed a response [DE# 22] (the "Response"), and the Plaintiffs filed a reply in further support of their Motion for Summary Judgment [DE# 24] (the "Reply"). In seeking summary judgment, the Plaintiffs rely on the collateral estoppel effect of the State Court Final Judgment as to all counts of the state court complaint [DE# 1-1] (the "State Court Complaint"). The Defendant, in turn, argues that (1) the State Court Final Judgment does not have collateral estoppel effect, and (2) that even if the Court determines that the State Court Final Judgment satisfies the elements of collateral estoppel, the Court should decline to apply collateral estoppel on equitable grounds.

## Facts

1.   HAI and SD, along with Dale Howard (the "State Court Plaintiffs"), filed suit against the Debtor and others in the

3

Circuit Court, Miami-Dade County, on April 21, 2008 (Case No. 08-21603) (the "State Court Case"). The First Amended Complaint in the State Court Case [DE# 1-1] filed on September 11, 2008 (the "State Court Complaint"), sought relief against the Debtor and Defendant in this adversary proceeding, Shlomo Ben-Tov a/k/a Sam Goodson, Elena Goodson, who is married to Mr. Ben-Tov, and other corporate entities related to Mr. Ben-Tov (the "State Court Defendants").

<u>General Allegations</u>

2.   The State Court Complaint alleges the following facts:

a)   Mr. Ben-Tov, in or around 2006, represented to Dale Howard, that one of his companies, Virginia-Carolina Corporation, Inc. ("VCC"), was about to purchase "off-brand" tobacco product trademarks to compete in the marketplace with other more recognized brands, in order to bait competitors into buying VCC to eliminate it as a competitor. Mr. Ben-Tov also represented to Mr. Howard that VCC, as a member of a Master Settlement Agreement, had limited exposure to lawsuits caused by health related risks associated to smoking [State Court Complaint, ¶¶ 17-18].

b)   The State Court Complaint further alleges that pursuant to a series of oral agreements, the State Court Plaintiffs transferred $1,000,000 to the State Court Defendants in exchange for 10% of the shares of Original Tobacco Inc.

("Original Tobacco") and transferred an additional $350,000 in exchange for a 10% interest in VCC (together the "Initial Investment") [State Court Complaint, ¶ 20].

c) After the initial investment, Mr. Ben-Tov requested that Mr. Howard advance more money to purchase manufacturing equipment and fixtures to be owned by either VCC or Original Tobacco. Mr. Howard agreed and the State Court Plaintiffs transferred an additional $790,674. In exchange for the additional funds, the State Court Plaintiffs' ownership of VCC increased to 30% and increased to 40% in Original Tobacco. The equipment and fixtures were also to be additional collateral to the now $2,140,674 investment [State Court Complaint, ¶ 21].

d) Mr. Ben-Tov, at least partially, used the monies invested by the State Court Plaintiffs to purchase equipment and fixtures, but he acquired ownership to that equipment under ABC Management, LLC ("ABC") and/or Goodson Investments, Inc. ("Goodson Investments"), both companies entirely owned by Mr. Ben-Tov and Ms. Goodson [State Court Complaint, ¶ 22].

e) Mr. Ben-Tov also acquired all the "off-brand" tobacco trademarks in the name of Goodson Investments [State Court Complaint, ¶ 23].

f) The general allegations in the State Court Complaint include an allegation that Mr. Ben-Tov's

representations to induce Mr. Howard's investments and the oral agreement were fraudulent [State Court Complaint, ¶ 25].

g)   Lastly the State Court Complaint alleges that Mr. Ben-Tov, in an attempt to conceal assets and frustrate the collection efforts of the State Court Plaintiffs, transferred assets to VCC Holdings and Management, LCC ("VCC Holdings") [State Court Complaint, ¶ 27].

<u>The Counts of the State Court Complaint</u>

h)   The six count State Court Complaint includes three damage counts and three counts for equitable relief. Count I alleges breach of an oral contract, Count II alleges fraudulent inducement, Count III alleges a violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Count IV seeks the imposition of a equitable lien, Count V seeks an accounting, and Count VI seeks rescission.

i)   Counts I, II, and III request a judgment against all of the State Court Defendants for the State Court Plaintiffs' entire $2,140,674 investment, including pre-judgment and post-judgment interest and costs.  The State Court Complaint seeks the identical amount of damages in each of the three damage counts.

<u>The Fraud Allegations in the State Court Complaint</u>

j)   The allegations in Count II of the State Court Complaint state a claim for fraud under Florida law and state a

claim to except the debt from discharge under §523(a)(2). The allegations include the following:

(i) the complaint is an "action against Defendants for fraudulent inducement" [State Court Complaint, ¶ 38];

(ii) Mr. Ben-Tov, in his personal capacity and as a representative of the other State Court Defendants, "knowingly and intentionally made false representations to Plaintiffs, including but not limited to false representations concerning the value of VCC and Original Tobacco, the owner of various assets purportedly held by VCC and Original Tobacco and the purpose[s] to which Defendant would use the Funds" [State Court Complaint, ¶ 39];

(iii) the "Defendants knew or should have known that these representations were false, and knew or should have known that they had no present intent to perform their obligations under the Oral Agreements" [State Court Complaint, ¶ 40];

(iv) the "Defendants intended that the false representations would induce Plaintiffs to enter into the Oral Agreements" [State Court Complaint, ¶ 41];

(v) the "Defendants' false representations were material factors in Plaintiffs' decision to enter into the Oral Agreements" [State Court Complaint, ¶ 42] and;

7

(vi) "as a direct and proximate result of Defendants improper conduct, Plaintiffs have suffered damages in justifiable reliance on Defendants' false representations" [State Court Complaint, ¶ 43].

## State Court Procedural History

3.   The docket in the State Court Case [DE# 24-1] reflects that the case was defended for more than two years. However, on October 19, 2010, the State Court entered an order striking the State Court Defendants' pleadings and entering default against them due to Mr. Ben-Tov's conduct, which the State Court described as "deliberate and contumacious" in his disregard for court orders, and for Mr. Ben-Tov's failure to appear for a hearing that same day. [DE# 1-2](the "Order Striking Pleadings").

4.   The State Court then scheduled a trial on July 2, 2012, to determine damages. The State Court Defendants also failed to appear at the July 2nd hearing. [Transcript of July 3, 2012 hearing in State Court Case (hereafter referred to as the "Transcript") DE# 22, p. 31]. The State Court reset the matter for trial on July 3, 2012 and the State Court Defendants again failed to appear [Transcript, p. 31].

5.   At the July 3, 2012 hearing set to determine damages, after the State Court Defendants failed to appear, the State

Court Plaintiffs moved for entry of final judgment in the full amount of their claim [Transcript, p. 33].

6.   Liability was no longer an issue because of the Order Striking Pleadings.   Counsel for the State Court Plaintiffs stated at the hearing that "[t]here's a count for breach of oral contract, there's a count for fraud in the inducement, there's a count for violation of the Florida's Deceptive and Unfair Trade Practices Act. Liability has been established by prior order on all three." [Transcript, pp. 32-33].

7.   It is important to note that at the July 3, 2012 hearing, State Court Plaintiffs' counsel also stated on the record that the damages sought "for all three [counts]" are the same [Transcript, pp. 32-33].

8.   State Court Plaintiffs' counsel further specified that "the damages we're seeking… [are] in a jury instruction we previously submitted pursuant to Your Honor's order, [which] reflects that the damages would be the same for each count." The State Court, in response to State Court Plaintiffs counsel's statements, then asked "[s]o a concurrent amount for each count?" and State Court Plaintiffs' counsel responded "[c]orrect, correct, in the total amount." [Transcript, pp. 33-34].

9.   After further colloquy between State Court Plaintiffs' counsel and the State Court, the State Court ruled by stating

"I'm going to grant your motion. Do you have a proposed order for me." [Transcript, p. 35].

10.  Following the ruling made on the record at the July 3, 2014 hearing, the State Court entered the State Court Final Judgment.  Based upon the statements of counsel and the State Court at the July 3, 2012 hearing, it is clear that the State Court was entering judgment on all three damage counts in the full amount requested by the State Court Plaintiffs.


**The State Court Final Judgment**
**is Entitled to Collateral Estoppel Effect**

Summary judgment is appropriate where the moving party demonstrates that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex v. Catrett*, 477 U.S. 317, 322 (1986).

Collateral estoppel bars relitigation of issues decided in a prior judicial proceeding.  *Bush v. Balfour Beatty Bahamas, Ltd.*, 62 F.3d 1319 (11th Cir. 1995) ("*Bush*").  Collateral estoppel principles apply to dischargeability proceedings. *Grogan v. Garner*, 498 U.S. 279 (1991)("*Grogan*").  In determining the collateral estoppel effect of a Florida state court judgment, bankruptcy courts must look to Florida's collateral estoppel law.  *In re St. Laurent*, 991 F.2d 672, 676 (11th Cir.

1993)("*St. Laurent*"); *In re Itzler*, 247 B.R. 546 (Bankr. S.D. Fla. 2000) ("*Itzler*").

Under Florida law, as interpreted by the Eleventh Circuit in *St. Laurent*, the following elements must be established before collateral estoppel may be invoked:

> the issue at stake must be identical to the one decided in the prior litigation; (2) the issue must have been actually litigated in the prior proceeding; (3) the prior determination of the issue must have been a critical and necessary part of the judgment in that earlier decision; and (4) the standard of proof in the prior action must have been at least as stringent as the standard of proof in the later case.

*St. Laurent*, 991 F.2d at 676.[2]

There is no dispute as to the first element, identity of the issue at stake. The elements of common fraud under Florida law "closely mirror the requirements of §523(a)(2)(A) and, hence, are sufficiently identical to meet the first prong of the

_____

[2] In their Motion for Summary Judgment, Plaintiffs argue that the "critical and necessary" element is not found in any Florida Supreme Court cases. Instead, the Florida Supreme Court states the collateral estoppel elements in a slightly different way: the essential elements require that "'the parties and issues be identical, and that the particular matter be fully litigated and determined in a contest which results in a final decision of a court of competent jurisdiction.'" *Dadeland Depot, Inc. v. St. Paul Fire & Marine Ins. Co*. 945 So. 2d 1216, 1235 (Fla. 2006) *quoting Department of Health & Rehabilitative Services v. B.J.M.*, 656 So. 2d 906, 910 (Fla. 1995). Whether the "critical and necessary" element in *St. Laurent* is an element under Florida collateral estoppel law is a colorable legal issue. Nevertheless, for purposes of this opinion, the Court will assume that *St. Laurent* correctly states the elements of collateral estoppel under Florida law.

test for collateral estoppel." *Id*. The fourth element is also not in dispute. The preponderance of the evidence standard applies in dischargeability proceedings. *Grogan,* 498 U.S. at 291.

The second element, requiring that the issue was actually litigated, is also satisfied by the State Court Final Judgment, even though the judgment was entered by default. This Count fully explored and decided this issue in *Itzler*. In that case, the plaintiffs obtained a default final judgment in state court for breach of a promissory note and fraud in the inducement. The state court complaint in *Itzler*, like the State Court Complaint here, alleged that the debtor/defendant induced the plaintiff, through fraudulent misrepresentations, to loan him monies. In *Itzler,* this Court reviewed Florida law and concluded "'[t]he law is clear that a default judgment conclusively establishes between the parties, so far as subsequent proceedings on a different cause of action are concerned, the truth of all material allegations contained in the complaint in the first action and every fact necessary to uphold the default judgment." 247 B.R. at 551 *quoting Perez v. Rodrigue*z, 349 So.2d 826, 827 (Fla. Dist. Ct. App. 1977).

This Court reaffirmed its *Itzler* conclusion about default judgments in *Hartnett v. Mustelier* (*In re Hartnett*), 330 B.R. 823, 830 (Bankr. S.D. Fla. 2005). Other courts interpreting

Florida law have reached the same conclusion: A default judgment satisfies the actually litigated element under Florida collateral estoppel law. *See e.g. Tobin v. Labidou* (*In re Labidou*), 2009 WL 2913483 at *5 (Bankr. S.D. Fla., Sept. 8, 2009); *In re Shiver*, 396 B.R. 110 (Bankr. S.D.N.Y. 2008) (citing and following *Itzler* in applying Florida law).

The final element, and the only element seriously in dispute, is whether the fraud count in the State Court Complaint was a "critical and necessary" part of the State Court Final Judgment. Because Mr. Bentov's pleadings were stricken, the fraud allegations are deemed true. Had the State Court Complaint contained only a fraud count, there would be nothing to argue about. Collateral estoppel would preclude Mr. Bentov from relitigating the fraud allegations in defense of Plaintiffs' §523(a)(2) complaint. As explained below, the result is not any different in this case just because the State Court Complaint contains other counts.

Let us assume a Florida state court case goes to trial on both a fraud claim and a contract claim, and the jury simply enters a verdict in favor of the plaintiff with nothing more. All would agree that judgment could not have collateral estoppel effect in a subsequent §523(a)(2)(A) complaint because there is no way to know if the jury found in favor of the plaintiff on the fraud claim, the contract claim, or both. *See e.g., Sun*

13

*State Roofing Co., Inc. v. Cotton States Mutual Insurance Co.*, 400 So. 2d 842 (Fla. 3d DCA 1981).

The issue that divides courts is whether the result is the same if a state court enters a default judgment on a multi-count complaint and the judgment does not refer to any specific count. The primary bankruptcy court decision that supports the Defendant's argument is Judge Glenn's decision in *In re Green*, 262 B.R. 557 (Bankr. M.D. Fla. 2001) ("*Green*"). In *Green*, like in this case, a default judgment was entered against the debtor in a multi-count complaint with a fraud count and a breach of contract count. That Florida state court final judgment also did not refer to any particular count and simply entered a money judgment.

Judge Glenn denied the judgment creditor's motion for summary judgment in an adversary proceeding seeking to except the judgment debt from discharge, finding that collateral estoppel did not apply because the plaintiff could not establish that the fraud count was "critical and necessary" to the state court final judgment. Judge Glenn stated the following:

> Even if all of the allegations in a complaint are deemed established, however, this Court cannot conclude that allegations regarding fraud are a "critical and necessary" part of a simple default judgment in those cases in which both fraud counts and non-fraud counts were asserted in the state court complaint and there is no way to

> distinguish which count is the basis for the
> judgment.

*Green*, 262 B.R. at 564.

This Court disagrees with Judge Glenn's conclusion in *Green*. As discussed earlier, this Court held in *Itzler* that "[b]y entering the Default Final Judgment against Itzler in the State Court Case, the state court conclusively found all material allegations of the [plaintiffs'] complaint to be true." 247 B.R. at 551. While *Itzler* did not address the multi-count situation presented here, Judge Proctor addressed this issue in *In re Vickers*, 247 B.R. 530 (Bankr. M.D. Fla. 2000) ("*Vickers*"). Judge Proctor concluded that because every allegation in the Florida state court complaint before him, including the fraud claim, "was conclusively established as true by entry of the default judgment… the Court finds the elements of common law fraud to be critical and necessary to the state court default judgment." *Vickers*, 247 B.R. at 536.

This Court believes that Judge Proctor got it right. A default judgment is not like a judgment based on a jury verdict where a complaint has multiple counts and the jury makes no specific finding on the fraud count. Florida law instructs that a default establishes the truth of all allegations in the complaint. In this Court's view it is wrong and illogical to say that a court cannot determine which count forms the basis for a

default judgment, because when a judgment stems from a default, each count is proven.

One other decision merits discussion. In *Tobin v. Labidou* (*In re Labidou*), 2009 WL 2913483 (Bankr. S.D. Fla., Sept. 8, 2009)("*Labidou*"), the creditor sought to except a debt from discharge under §523(a)(2) based upon a default judgment in a prior state court case.  The state court complaint included a count for breach of oral agreement, a count for fraud, and a count for conversion. The state court entered a default final judgment, which, like the State Court Final Judgment in this case, did not refer specifically to any of the counts.

In *Labidou*, the plaintiff asked for "at least" $40,000 in damages on the contract claim. The defendant abandoned his defense and the court, without the defendant's participation, conducted a jury trial on damages only. The jury awarded $93,821 and the state court entered final default judgment against the debtor in that amount. *Labidou*, 2009 WL 2913483 at *2. Judge Kimball found nothing in the record to indicate what portion of the judgment was attributable to each count. As the court noted, it was possible that the jury looked only to the contract claim for the entire amount of its verdict. Judge Kimball held that collateral estoppel could not be applied because the plaintiff could not meet the "critical and necessary" element. *Id*. at *5-6. Judge Kimball further reasoned that:

> Where the complaint in a prior proceeding
> contains multiple causes of action, but the
> final judgment awards only a single monetary
> amount without designating the cause of
> action to which the award relates or
> specifying a basis for the award, it cannot
> be known whether any particular cause of
> action was 'essential' to the final
> judgment.

*Id.*

Judge Kimball's decision not to apply collateral estoppel as to the damage amount was sound. However, the court could have invoked collateral estoppel to grant partial summary judgment as to liability because once the default final judgment was entered, the fraud allegations in the complaint were deemed admitted pursuant to Florida law.

The State Court Final Judgment in this case meets all the elements of the *St. Laurent* four part test, including the "critical and necessary" element. First, once the State Court Final Judgment was entered, all allegations in the State Court Complaint were deemed admitted, including the general fraud allegations in the fact section and the specific fraud allegations in Count II.  Second, the record before the Court establishes that the State Court entered judgment on all counts of the State Court Complaint and, unlike in *Labidou*, the State Court specifically entered the identical monetary award on all counts. Because the State Court Final Judgment includes a judgment for fraud in the full amount of the damages that were

17

awarded, the fraud claims were a "critical and necessary" part of the State Court Final Judgment.

## There is No Cause to
## Apply the Manifest Injustice Exception
## to the Application of Collateral Estoppel in this Case

The Defendant argues that even if the State Court Final Judgment meets the *St. Laurent* test, the Court should exercise its discretion and not apply collateral estoppel citing *Weisser v. Rubin* (*In re Rubin*) 2000 WL 387657 (Bankr. S.D. Fla. April 11, 2000)("*Rubin*"). In *Rubin*, the court declined to apply collateral estoppel to a Florida state court pure default judgment which was entered after the defendant was virtually abandoned by his soon to be disbarred attorney.

This Court has also declined to apply collateral estoppel to a Florida default judgment that met the *St. Laurent* test in one unusual and unfortunate case, *Hartnett v. Mustelier* (*In re Hartnett*), 330 B.R. 823 (Bankr. S.D. Fla. 2005) ("*Hartnett*"). In *Hartnett*, the debtor filed a §523(a)(5) adversary proceeding to determine the dischargeability of child support obligations arising from a default judgment in a paternity case. 330 B.R. at 825. Prior to the filing of his bankruptcy case, a DNA test determined conclusively that Hartnett was not the father. Despite this uncontroverted evidence, the state court denied

18

Hartnett's motion to set aside the judgment as untimely under the applicable Florida Rule of Civil Procedure. *Id.*

In the *Hartnett* adversary proceeding, the defendant mother established each of the elements of collateral estoppel. Nevertheless, the Court denied defendant's motion for summary judgment based on a narrow Florida law exception to applying collateral estoppel: Courts may decline to apply collateral estoppel where its application would result in "manifest injustice." *Id.* at 831, *citing State v. McBride*, 848 So. 2d 287, 292 (Fla. 2003). The unusual and compelling facts in *Hartnett* convinced this Court not to give collateral estoppel effect to the paternity judgment because doing so was necessary to protect the debtor from the "gross injustice" of emerging from bankruptcy saddled with child support debts for children that were not his. *Id.*

The Court finds no cause to decline applying collateral estoppel in this case. First, upon further review and despite this Court's citation to *Rubin* in *Hartnett*, the Court now rejects the proposition in *Rubin* that federal courts have broad discretion to not apply collateral estoppel when all the elements are satisfied under Florida law. *Rubin* relied on language in the Eleventh Circuit's *Bush* decision which seemingly grants such discretion. 62 F.3d at 1325 n. 8. Unlike this proceeding and unlike *Rubin*, *Bush* dealt solely with federal

principles of collateral estoppel: whether or not the bankruptcy court should apply collateral estoppel to a prior federal judgment. *See In re Shiver*, 396 B.R. 110, 123 (Bankr. S.D.N.Y. 2008) (finding that *Rubin* is not persuasive authority for declining to give collateral estoppel effect to a Florida default judgment).

The facts in the record and arguments by Defendant Bentov fall far short of establishing that applying collateral estoppel would be manifestly unjust. Unlike *Rubin* (even if the Court believed *Rubin* is persuasive authority), Defendant Bentov did not suffer a pure default in the State Court Case. He defended the action for years and was defaulted only after he violated several court orders and his pleadings were stricken.

The manifest injustice exception should be applied sparingly. Arguably, all default judgments are harsh to defendants who believe they have meritorious defenses. But Florida law is clear that default judgments have preclusive effect. Ultimately if courts had discretion to decline to apply collateral estoppel because of a perceived harsh result, the exception would swallow the rule. In short, the Court concludes that application of collateral estoppel to the State Court Final Judgment in this case is not "manifestly unjust."

## Conclusion

Under Florida collateral estoppel, a default judgment establishes the truth of all allegations in a complaint. In this proceeding, the State Court Complaint contained a fraud count that included allegations establishing all of the elements of the §523(a)(2)(A) fraud exception to discharge. The full damage award in the State Court Final Judgment was awarded on each count, including the fraud count. Collateral estoppel bars the Defendant from relitigating the fraud allegations. The existence of other counts in the State Court Complaint does not change this result. Therefore, it is –

**ORDERED** as follows:

1.  Plaintiffs' Motion for Summary Judgment is granted.

2.  The Court will enter a separate Final Judgment excepting the State Court Final Judgment from discharge under §523(a)(2)(A).

###

COPIES TO:

Jeffrey S. Berlowitz, Esq.
SIEGFRIED RIVERA
201 Alhambra Circle, 11th Floor
Coral Gables, FL  33134

Michael B. Green, Esq.
GUNSTER YOAKLEY
Two South Biscayne Blvd., Suite 3400
Miami, FL  33131